UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PAUL P., ) | |
| ) | |
|     *Plaintiff* ) | |
| ) | |
| v. ) | No. 1:20-cv-00192-JDL |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
|     *Defendant* ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income (SSI) appeal raises the questions of (i) whether the physical residual functional capacity (RFC) assessed by the administrative law judge (ALJ) is supported by substantial evidence and (ii) whether the ALJ supportably found that, although the plaintiff was disabled, his substance use was material to his disability, thereby disqualifying him from receiving benefits. The plaintiff seeks remand on the bases that the ALJ erred by assessing a physical RFC that was less restrictive than the one assessed by a previous ALJ and by failing to comply with Social Security Ruling 13-2p in finding substance use a material factor in his disability. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 17) at 2-11. I discern no error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had the severe impairment of alcohol use disorder and cannabis use disorder, Finding 2, Record at 17; that he had the RFC to perform a full range of work at all exertional levels but had to avoid work involving a variety of instructions or tasks, was able to carry out simple one- or two-step instructions and detailed but uninvolved written or oral instructions involving a few concrete variables in or from standardized situations, had to avoid work with the public, could work with supervisors and coworkers, and would likely be absent from work more than four days a month, Finding 4, *id.* at 18; that, considering his age (52 years old, defined as an individual closely approaching advanced age, on the date his SSI application was filed, May 19, 2017), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were no jobs existing in significant numbers in the national economy that he could perform, Findings 6-9, *id.* at 19-20; that, if he stopped substance use, he would not have a severe impairment or combination of impairments, Finding 10, *id.* at 20; and that his substance use disorder, therefore, was a contributing factor material to the determination of disability, as a result of which he had not been disabled at any time from the date his SSI application was filed, May 19, 2017, through the date of the decision, July 25, 2019, Finding 11, *id.* at 22. The Appeals Council declined to review the decision, *id.* at 2-4, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be

supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

## I.  Discussion

### A.  Physical RFC Determination

The ALJ found that the plaintiff had the medically determinable physical impairments of obesity and a "history of coronary artery disease, status post myocardial infarction in 2009" but that they were not severe. Record at 17. She noted that there was "no documentation of cardiovascular or any other physical impairment limiting the [plaintiff]'s work capacity since" he filed his SSI application in May 2017, that a physician "saw no evidence of a physical disability" in August 2018, and that the plaintiff's physical examinations had been unremarkable. *Id.*[2]  Consistent with these findings, she assessed an RFC with no exertional limitations. *See* Finding 4, *id.* at 18.

#### 1.  The ALJ's Alleged Error in Interpreting Raw Medical Evidence

The plaintiff argues that the ALJ improperly interpreted raw medical evidence in assessing an RFC with no physical limitations because (i) the agency nonexamining consultants who reviewed his case at the initial and reconsideration levels each determined that there was insufficient medical evidence to assess his claims and (ii) the ALJ erroneously rejected the report of Robert N. Phelps Jr., M.D., who examined the plaintiff in 2014 in connection with a prior disability claim. *See* Statement of Errors at 2-9; Record at 88, 98-99, 582-85.

I am not persuaded.

---

[2] These specific findings about the plaintiff's heart condition contradict his suggestion that the ALJ "simply ignored [his] heart issues in her decision[.]" Statement of Errors at 3.

First, to the extent that the plaintiff argues that the "limited" nature of the record justifies remand, Statement of Errors at 3, he bore the burden of proving his limitations, *see Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001).  His suggestion that his lack of health insurance was to blame for the dearth of medical evidence, *see* Statement of Errors at 3 n.1, is undermined by the fact that he failed to undergo a consultative examination despite multiple requests that he do so, *see* Record at 88 (noting, at the initial level of review in September 2017, that the plaintiff's counsel had not been in contact with the plaintiff "for over a month" and was "unable to confirm if there [were] any recent sources or if [he was] willing to attend an exam"); *id.* at 98 (noting, at the reconsideration level of review in November 2017, that the plaintiff had failed to cooperate and that neither he nor his counsel had responded to letters and phone calls requesting confirmation that he would undergo a consultative examination).  Had he cooperated in more fully developing his claim, the record would not have been so limited.

Second, the ALJ supportably found the 2014 opinion of Dr. Phelps, *see* Record at 582-85, "immaterial" to the plaintiff's "functional status as of May 2017[,]" *id*. at 19 (citations omitted); *cf. Pike v. Colvin*, No. 2:14-cv-535-DBH, 2015 WL 6875765, at *10 (D. Me. Oct. 3, 2015) (rec. dec., *aff'd* Nov. 9, 2015) (holding that an ALJ supportably deemed a medical opinion immaterial when it postdated the period at issue by several years and described the claimant's "then-current limitations").  Contrary to the plaintiff's argument that the ALJ erred in assessing the materiality of Dr. Phelps's opinion "based on nothing more than her own lay assessment[,]" Statement of Errors at 4, the ALJ was competent to assess the materiality of the opinion evidence, *see, e.g., Breingan v. Astrue*, No. 1:10-cv-92-JAW, 2011 WL 148813, at *6 n.5 (D. Me. Jan. 17, 2011) (rec. dec., *aff'd* Feb. 22, 2011) (rejecting a claimant's argument that an ALJ impermissibly interpreted raw medical evidence when he accorded little weight to a medical opinion).  The

plaintiff's additional argument that the ALJ failed in her duty to consider all the evidence when she found Dr. Phelps's opinion immaterial is a non sequitur, *see* Statement of Errors at 5; the ALJ necessarily considered the opinion when she determined that it was immaterial.

Third, the ALJ appropriately relied on medical evidence suggesting "a relatively mild physical impairment posing, to the layperson's eye, no significant exertional restrictions" when determining that the plaintiff's heart condition was not severe and did not limit his capacity to work. *Manso-Pizarro*, 76 F.3d at 17-18. Most notably, as the ALJ observed, *see* Record at 17, a record from Sebasticook Valley Health showed that a physician declined in August 2018 to sign off on the plaintiff's disability claims after reviewing his records and concluding that there was not "adequate evidence to suggest that he in fact ha[d] a physical disability[,]" *id.* at 671.[3] The ALJ also pointed to notes of several "unremarkable" physical examinations, *id.* at 17, recording a normal heart rate and rhythm, *see id.* at 660, 667, 673, one of which indicated that a February 2018 echocardiogram and stress test "were normal[,]" *id.* at 667.[4] The plaintiff confirmed these results at the hearing before the ALJ, testifying that he had gone to see a heart specialist "not too long ago" and that, after he underwent an echocardiogram and a stress test, the specialist said, "[E]verything's pumping and looking and working fine." *Id.* at 38.

---

[3] For the first time at oral argument, the plaintiff asserted that the ALJ ascribed too much significance to the physician's conclusion that he was not suffering from a physical disability because the physician was not familiar with disability as it is defined in the Social Security regulations. This argument is waived. *See, e.g., Connor v. Colvin*, No. 1:13-cv-00219-JAW, 2014 WL 3533466, at *5 n.4 (D. Me. July 16, 2014) ("The general rule in this district long has been that any claim or issue not raised in a claimant's statement of errors is deemed waived."). Even if it were not waived, however, the ALJ was entitled to give weight to the physician's opinion. *Cf. Maldonado v. Astrue*, Civil No. 08-412-B-W, 2009 WL 1885057, at *2 (D. Me. June 30, 2009) (rec. dec., *aff'd* July 23, 2009) (characterizing a treating physician's opinion that a claimant was "probably not disabled" as "quite relevant" to her disability claim).
[4] Contrary to the plaintiff's passing argument, *see* Statement of Errors at 4, the ALJ did not cite just one page of his Sebasticook Valley Health records when concluding that his heart condition was not severe, *see* Record at 17 (citing *id.* at 660, 667, 671, 673).

Faced with such benign evidence, the ALJ did not err in making a common-sense judgment that the plaintiff's heart condition was not severe and did not limit his capacity to work.[5] *See Manso-Pizarro*, 76 F.3d at 17-18; *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (noting that where the medical evidence shows relatively little physical impairment, an ALJ can render a common-sense judgment about functional capacity even without a physician's assessment); *Leech v. Berryhill*, No. 2:16-cv-00487-GZS, 2017 WL 2817023, at *3 (D. Me. June 28, 2017) (rec. dec., *aff'd* July 26, 2017) ("[T]his court has rejected the notion that it is *per se* error for an ALJ to determine that an impairment is nonsevere in the absence of expert medical assistance[.]" (citation omitted)); *Small v. Colvin*, No. 2:14-cv-042-NT, 2015 WL 860856, at *7 (D. Me. Feb. 27, 2015) (affirming an ALJ's determination of nonseverity absent reliance on any expert opinion when the ALJ identified substantial evidence supporting his conclusion).

The plaintiff attempts to undermine the ALJ's findings by pointing to his own testimony that his heart condition left him fatigued after physical exertion, *see* Statement of Errors at 3-4, but he fails to independently challenge the ALJ's finding that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the objective medical and other evidence[,]" Record at 21. He also points to a medical record from April 2016 describing his heart condition as "deteriorated" but does not explain how this single record from more than a year before the date he filed his SSI application undermines the ALJ's reliance on newer records showing his heart functioning normally. Statement of Errors at 4 (citing Record at

---

[5] I find no merit to the plaintiff's argument that this court cannot affirm the ALJ's decision on this basis because she did not expressly state that she was making a common-sense judgment. *See* Statement of Errors at 7; *cf. Kristina D. B. v. Berryhill*, No.1:18-cv-00088-JHR, 2019 WL 1407407, at *4 (D. Me. Mar. 28, 2019) (holding that an ALJ did not err in assessing claimant's mental RFC when it was "*reasonably apparent* that the ALJ did not construe raw medical evidence but, rather, gave the [claimant] the benefit of the doubt" (emphasis added)).

646). His further attempt to rebut the ALJ's findings with a citation to a medical record indicating that his father died of a heart attack at age 52 falls short for the same reason. *See id.* (citing Record at 685).

### 2. The ALJ's Alleged Error in Failing to Follow Previous ALJ's Findings

The plaintiff argues, in the alternative, that in the absence of any evidence of medical improvement, the ALJ was bound to follow the RFC determination of a prior ALJ who found that, for the period from October 17, 2014, through March 23, 2016, the plaintiff's heart condition limited him to light work. *See* Statement of Errors at 3-5; Record at 63, 65, 68, 73.[6] In support of that argument, he relies primarily on two cases: *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), and *Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000). *See* Statement of Errors at 3-5.

In *Drummond*, the United States Court of Appeals for the Sixth Circuit held that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Drummond*, 126 F.3d at 842. In *Loza*, the United States Court of Appeals for the Fifth Circuit held that "once evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained unchanged." *Loza*, 219 F.3d at 395-96.

As the plaintiff's counsel conceded at oral argument, this court has explicitly declined to embrace the holding of *Drummond*, which it deemed "a departure from the commissioner's established policy that when a claimant files a new application covering a new time frame, the issues (including RFC) are to be examined *de novo*." *Frost v. Barnhart*, No. 03-215-P-H, 2004 WL 1529286, *3 (D. Me. May 7, 2004) (rec. dec., *aff'd* June 3, 2004), *aff'd*, 121 F. App'x 399

---

[6] At oral argument, the plaintiff's counsel referenced an even earlier decision in which an ALJ found him limited to light work. The plaintiff has waived any reliance on that decision by failing to raise it in his brief. Even if it were not waived, the decision would not have been binding on the ALJ for the same reasons discussed herein.

7

(1st Cir. 2005).⁷ The plaintiff's counsel, nonetheless, urged this court to follow *Loza*, which he contended is distinguishable from *Drummond* in that it comports, rather than arguably conflicts, with the commissioner's regulations.

In support of that proposition he cited 20 C.F.R. § 404.1594, *Moreau v. Colvin*, No. 1:14-CV-191-JHR, 2015 WL 1723230 (D. Me. Apr. 14, 2015), *Abril v. Comm'r of Soc. Sec.*, No. 17-CV-6883L, 2019 WL 1552022 (W.D.N.Y. Apr. 10, 2019), and *Skowronek v. Saul*, Civil Action No. 19-748, 2020 WL 5569746 (W.D. Penn. Sept. 17, 2020). Yet, none of those authorities considers whether an ALJ is bound by the finding of an ALJ in a prior claim, rendering them inapplicable to, and/or distinguishable from, this case. *See* 20 C.F.R. § 404.1594 (Social Security Disability (SSD) regulation pertaining to the determination of whether a claimant's disability has ended as a result of medical improvement); *Moreau v. Colvin*, No. 1:14-CV-191-JHR, 2015 WL 1723230, at *6-7 (D. Me. Apr. 14, 2015) (rejecting claimant's argument in combined SSI/SSD case that, pursuant to *Loza*, ALJ erred in failing to call a medical advisor to determine whether claimant was disabled prior to his date last insured for SSD benefits); *Abril v. Comm'r of Soc. Sec.*, No. 17-CV-6883L, 2019 WL 1552022, at *1 (W.D.N.Y. Apr. 10, 2019) (rejecting claimant's argument in combined SSI/SSD case that ALJ erred in finding that, although claimant was initially disabled, she was no longer disabled thereafter pursuant to 20 C.F.R. § 404.1594 as a result of medical improvement); *Skowronek v. Saul*, Civil Action No. 19-748, 2020 WL 5569746, at *1 (W.D. Penn. Sept. 17, 2020) (agreeing with claimant's argument in combined SSI/SSD case that

---

⁷ Moreover, as the commissioner points out, *see* Defendant's Opposition to Plaintiff's Statement of Errors (ECF No. 21) at 6 n.3, the Sixth Circuit has clarified that *Drummond* does "not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings[,]" *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931 (6th Cir. 2018).

ALJ erred in finding that she was no longer disabled pursuant to 20 C.F.R. § 404.1594 as a result of medical improvement).

To apply *Loza* in the manner that the plaintiff seeks – *i.e.*, to create a presumption that a prior ALJ's RFC findings are binding unless a subsequent ALJ can identify evidence of improvement – would be to embrace the holding of *Drummond* by a different name, which, in turn, would be contrary to this court's case law and the commissioner's established policy. *See Frost*, 2004 WL 1529286, at *3-4. Instead, as this court clarified in *Frost*, the significance of findings by a prior ALJ depends on whether, in the totality of the circumstances of the current case, the ALJ's decision is supported by substantial evidence. *See id*. at *4.

In this case, in which (i) more than a year passed between the previous ALJ's decision and the plaintiff's filing of the current application for benefits, (ii) the ALJ's decision concerned a different time period than the previous ALJ's, and (iii) the ALJ relied on new evidence showing that the plaintiff's heart was functioning normally, the ALJ's RFC was supported by substantial evidence. *See id.* (application of doctrine of collateral estoppel was "simply . . . inappropriate" when, among other things, there was a gap of three years between the previous adjudication and the claimant's filing of the subsequent application for benefits, the ALJ considered a different time period than the previous ALJ, and the ALJ based his decision not only on evidence presented to previous ALJ but also on significant new evidence); *Cameron v. Berryhill*, 356 F. Supp. 3d 186, 198 (D. Mass. 2019) ("Not only did [the claimant's] second application fail to supplement the first period's record with substantiating evidence of disability, but its lacunae for the subsequent period gave the [ALJ] the opportunity to refine and revise [the previous ALJ's] conclusions. Substantial evidence thus supports the [ALJ's] RFC finding, notwithstanding [the ALJ's] modifications to that of [the ALJ] before him.").

## B.  Substance Abuse

In 1996, Congress enacted the Contract with America Advancement Act (CAAA), which amended the Social Security Act to preclude "disability benefits where drug addiction or alcoholism was a contributing factor material to the Commissioner's determination of disability." *Justin A. L. v. Saul*, No. 2:19-cv-00325-JDL, 2020 WL 2989071, at *2 (D. Me. June 3, 2020) (rec. dec., *aff'd* July 13, 2020) (citation and internal quotation marks omitted); *see* 42 U.S.C. § 1382c(a)(3)(J).  The critical question under the CAAA is whether the claimant would still be found disabled "if [he] stopped using drugs or alcohol."  20 C.F.R. § 416.935(b)(1); *see also* 20 C.F.R. § 416.935(b)(2)(i) ("If [the commissioner] determine[s] that [the claimant's] remaining limitations would not be disabling, [he] will find that [the] drug addiction or alcoholism is a contributing factor material to the determination of disability.").

To help explain its policies for considering "whether 'drug addiction and alcoholism' (DAA) is material" to a disability determination, the Social Security Administration has issued Social Security Ruling 13-2p (SSR 13-2p).  SSR 13-2p, 2013 WL 621536, at *1 (Feb. 20, 2013). SSR 13-2p defines DAA as "maladaptive patterns of substance use that lead to clinically significant impairment or distress[,]" consistent with the definition of substance use disorders "in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM)[.]"  *Id.* at *3.  The ruling dictates that there must be "objective medical evidence" – *i.e*., signs, symptoms, laboratory findings, or clinical findings – from an "acceptable medical source" to support "a finding that a claimant has DAA."  *Id.* at *10.  Similarly, to "support a finding that DAA is material," there must be "evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA."  *Id.* at *9.

In this case, the ALJ found that the plaintiff had the severe impairment of alcohol use disorder and cannabis use disorder. *See* Finding 2, Record at 17. She assessed several mental limitations stemming from the plaintiff's substance use based on the assessment of his treating psychiatric mental health nurse practitioner, Donna Huff, PMH-NP, whose opinion accounted for "the effects of substance abuse." *Id.* at 18; *see also id.* at 676-78. She further found that, if the plaintiff stopped his substance use, his remaining limitations would not cause more than a minimal impact on his ability to perform basic work activities and he, therefore, would not have a severe impairment or combination of impairments. *See* Finding 10, *id.* at 20. The ALJ explained:

> [M]ental status examinations since the alleged onset date have been largely unremarkable, with hypervigilance the only abnormality generally noted. In determining the above limitations, I am relying in part on Ms. Huff's assessment of the [plaintiff]'s functioning in October 2018, which she indicated included the effects of substance abuse. Ms. Huff stated that she has not known the [plaintiff] to have had a period of abstinence from alcohol and cannabis since she began seeing him in August 2017. Although the documentary record does not reflect objective findings that support the[] limitations [opined by Ms. Huff, her] opinion that the [plaintiff]'s functioning is significantly affected is reasonable in light of the level of substance use indicated in the treating source notes. In August 2017, the [plaintiff] reported drinking 6-8 25-ounce cans of beer a day and smoking cannabis daily. Records from September 2017 state he used alcohol and cannabis "as often as he can." Although the [plaintiff] alleged in October 2017 that he reduced his alcohol use to 1-2 beers a day, that record also indicates he reported having 6 drinks on a typical day, and Ms. Huff recorded his usage as 2-6 beers a day. In November 2017, the [plaintiff] said he drank 3-4 beers a day and used cannabis daily. In January 2018, he said he drank 2 beers a day. After January, the [plaintiff] did not see a provider until July 2018, when he returned to Ms. Huff and indicated that he was having 6 drinks [a] day, 7 days a week, a frequency he also reported in August 2018.

*Id.* at 18-19 (citations omitted).

The ALJ further found that the plaintiff's depression and post-traumatic stress disorder (PTSD), although medically determinable, were not severe. *See id.* at 17. She explained:

> In addition to the essentially unremarkable mental status exams, the [plaintiff]'s poor compliance with treatment argues against a conclusion that he is experiencing disabling symptoms of depression and PTSD. Although referred to Ms. Huff by

11

> his primary care provider in November 2016, the [plaintiff] did not see her until August 2017. Ms. Huff prescribed Risperdal in September 2017, but he did not begin taking it until July 2018. Although the [plaintiff] stated in October 2017 that he could not afford the $13 for the Risperdal, he was continuing to use alcohol and cannabis daily, which suggests that he preferred to spend his money on substance use rather than medication, and further diminishes support for a finding that he had a severe mental impairment aside from substance use disorder. Primary care records from January 2018 show the [plaintiff] said he was "feeling well," which is inconsistent with his allegation of disabling depression and PTSD. In addition, the [plaintiff] reported in August 2018 that trazodone was working "great," and he was "much less depressed" and his energy level was "much better."

*Id*. at 21-22 (citations omitted).

The plaintiff contends that the ALJ found that he suffered from substance abuse based merely on his use of alcohol and marijuana and that the record lacks the objective medical evidence of substance abuse required by SSR 13-2p. *See* Statement of Errors at 9-10. Based on this purported lack of evidence, he argues that the ALJ erred in finding that he had a medically determinable impairment of DAA and that it was material to his disability. *See id.* at 10. He asserts that the ALJ should have found that he would suffer from the same mental limitations even in the absence of any substance use and that she erred in assessing his mental RFC in the absence of substance use without relying on an expert opinion. *See id.* at 10-11.

Contrary to the plaintiff's arguments, the ALJ documented her reliance on NP Huff's findings and the "pervasive evidence of substance abuse" in the record when determining that he suffered from DAA. *See* Record at 18-19. NP Huff met with and treated the plaintiff on many occasions and repeatedly noted that he was suffering from alcohol and cannabis use disorders. *See id.* at 679-80 (noting that the plaintiff was being treated for, among other things, alcohol and cannabis use disorders); *id.* at 683, 691, 699, 707, 715, 723, 729 (noting that the plaintiff presented with alcohol and cannabis use disorder); *id.* at 686, 694, 702, 710, 718, 732, 741 (recording alcohol and cannabis use under "Current Problems (verified)"). These clinical findings, which come from

an acceptable medical source, satisfy the requirements of SSR 13-2p and undermine the plaintiff's argument that NP Huff never opined that he suffered from DAA. *See* 20 C.F.R. § 416.902(a)(7) (recognizing "Licensed Advanced Practice Registered Nurse[s], or other licensed advanced practice nurse[s] with another title," as "[a]cceptable medical source[s]"); *Jones v. Berryhill*, Civil Action No. 7:17-cv-586-CLS, 2018 WL 529957, at *3 (N.D. Ala. Jan. 24, 2018) ("It is true that the ALJ considered claimant's self-reports of marijuana use, sometimes on a daily basis, to her treating psychiatrist. Although those self-reports would not be sufficient, standing alone, the record also contains a diagnosis of 'cannabis abuse' from . . . the physician who treated claimant . . . . Because there is objective medical evidence from an acceptable source that supports a finding of cannabis abuse, the ALJ did not err in his application of SSR 13-2p.") (footnotes omitted); *Marciszewski v. Colvin*, Civil Action No. 7:14-CV-00059, 2015 WL 4945861, at *8-9 (N.D. Tex. Aug. 19, 2015) (rejecting a claimant's argument that there was no medical evidence to support the ALJ's findings of DAA where the ALJ documented her reliance on a treating physician's report diagnosing the claimant with "cannabis dependence").[8]

The plaintiff's argument that the ALJ erroneously assessed an RFC "in the absence of substance abuse[] . . . without [expert] support[,]" Statement of Errors at 11, is contradicted by SSR 13-2p, which provides that (i) the ALJ "determines whether DAA is material to the determination of disability" and, (ii) in determining that "a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA[,] . . . we do not permit [ALJs] to rely exclusively on medical expertise and the nature of a claimant's mental disorder[,]" SSR 13-2p, 2013 WL 621536, at *9, *14; *see also, e.g.*, *Devon A. G. v. Saul*, No. 1:20-cv-00005-NT, 2020

---

[8] Contrary to the plaintiff's suggestion, *see* Statement of Errors at 9, the ALJ did not concede that there was inadequate evidence of his DAA by finding that the specific limitations assessed by NP Huff lacked objective support in the record, *see* Record at 18.

WL 7335027, at *2 (D. Me. Dec. 14, 2020) (rec. dec., *aff'd* Jan. 4, 2021) ("In this specialized . . . context of the determination of whether a claimant with a co-occurring mental impairment would remain disabled if substance use were to cease, the ALJ did not err in failing to base the [claimant]'s projected mental RFC on an expert RFC assessment."); *Hamlin v. Colvin*, 199 F. Supp. 3d 247, 268 (D. Mass. 2016), *aff'd*, No. 16-2216, 2017 WL 4021233 (1st Cir. Sept. 7, 2017) (holding that a claimant's assertion "that medical experts, not the ALJ, must make the materiality determination" was "contradicted by clear Social Security policy and caselaw").

Furthermore, the ALJ appropriately relied on evidence demonstrating the negative effects of the plaintiff's DAA on his mental health when determining that it was material to his disability. She found:

> In addition to the reasonable inference that the quantity of the [plaintiff]'s substance use would result in functional limitations, the [plaintiff] and Ms. Huff have acknowledged that he is adversely affected by alcohol and cannabis. Ms. Huff's notes from August 2017 state [that] the [plaintiff] "has consequences of his drinking," without elaborating on them. However, in January 2018, Ms. Huff noted that, even though the [plaintiff] had not yet filled the prescription for Risperdal she prescribed in September 2017, "Overall he is improving regardless of medications as he is reducing his alcohol intake." This clearly indicates that his condition worsens with substance use. Furthermore, in October 2018, the [plaintiff] indicated that alcohol use interferes with work and home life.

Record at 19 (citations omitted); *see also id.* at 21-22 (finding that the plaintiff preferred to spend his money on alcohol and marijuana rather than his prescribed medication); *cf. Chanda v. Colvin*, No. 2:15-cv-52-JHR, at *10 (D. Me. Oct. 15, 2015) ("Evidence such as that on which the [ALJ] relied in this case – [t]hat the plaintiff's functioning demonstrably improved during even brief abstinences from alcohol or limitation on its use, that both he and his wife acknowledged that he was suicidal only when intoxicated, and that he acknowledged the ill effects of his substance use – has been held sufficient to constitute substantial evidence of the materiality of DAA.").

The plaintiff does not challenge these findings, nor does he explicitly challenge the ALJ's determination that his other medically determinable mental impairments were not severe. *See* Statement of Errors 9-11. To the extent that he implicitly challenges these findings by suggesting that the ALJ should have assessed the same limitations regardless of substance use, *see id.* at 10-11, he fails to point to any evidence demonstrating that he met his burden of proving his disability in the absence of DAA, *see, e.g.*, *Wright v. Colvin*, No. 2:14-cv-75-JHR, 2015 WL 58458, at *2 (D. Me. Jan. 5, 2015) ("[T]he burden is on the claimant to demonstrate that substance abuse is not a material factor . . . by showing that an impairment would have been disabling even if the substance abuse ceased.").

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 9th day of June, 2021.

                                      /s/ John H. Rich III
                                      John H. Rich III
                                      United States Magistrate Judge